## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JOHN DOE I, JOHN DOE II,<br>JOHN DOE III, JOHN DOE IV, and<br>JANE DOE,<br><br>Plaintiffs,<br><br>v.<br><br>RICK PARISH, REGINALD HINES,<br>JUSTIN JONES, BRAD HENRY, DREW<br>EDMONDSON, TIM HARRIS, STANLEY<br>GLANZ, and DAVE BEEN,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 06-CV-0457-CVE-FHM |

## OPINION AND ORDER

Now before the Court is Plaintiffs' Motion for Temporary Restraining Order and Brief in Support (Dkt. # 6). The Court held a hearing on plaintiffs' motion on September 12, 2006, and counsel for all parties were present.

### I.

Plaintiffs filed their complaint on September 1, 2006, alleging that Okla. Stat. tit. 21, § 1125 and Okla. Stat. tit. 57, § 590 violate their rights to procedural due process, substantive due process, equal protection, are unconstitutionally vague, and violate the Ex Post Facto Clause of the United States Constitution. Plaintiffs filed a motion seeking a temporary restraining order preventing defendants from enforcing either statute. The Court set a hearing on plaintiffs' motion and required plaintiffs to file proof of service of the Court's order setting hearing. Defendants were served on September 8, 2006 and appeared at the hearing through counsel. Defendants Drew Edmondson, Tim Harris, Rick Parish, Reginald Hines, Justin Jones and Brad Henry collectively filed a response to

plaintiffs' motion for a temporary restraining order.[1]  At the hearing, the Court asked plaintiffs whether they wished to proceed on the request for a temporary restraining order or the request for a preliminary injunction.  Defendants requested that the Court proceed on the request for for a temporary restraining order, given the limited time defendants had to prepare for the hearing.

Instead of having each plaintiff testify at the hearing, plaintiffs and defendants stipulated to the following facts: each plaintiff received a letter advising him or her that he or she was in violation of the 300 foot zone of safety established by Okla. Stat. tit 21, § 1125; plaintiffs are all sex offenders required to register under Oklahoma's Sex Offenders Registration Act, Okla. Stat. tit. 57, § 581 et seq.; all of their victims were under 13 years of age; plaintiffs resided in their homes prior to June 1, 2006, which was the effective date of the amendments to section 1125; none of the plaintiffs has actually been charged with a crime or prosecuted in any way under section 1125.

Plaintiffs stipulated to several other facts which significantly limit the issues before the Court:  On August 7, 2006, plaintiffs received a letter[2] notifying them of changes to the Sex Offenders Registration Act and section 1125, and informing them that the district attorney's office would be notified that plaintiffs were in violation of section 1125 unless they moved within 30 days. The letter stated:

> On June 7, 2006, Governor Brad Henry signed into law some changes to the Sex Offender Registration Act.  One of the changes specifically relates to the 300' Safe Zone created in May 2003.  This statute now includes high schools and parks.  It also broadens the range of those affected, from certain crimes, to any person that is required to register and whose victim is under the age of thirteen (13).

---

[1]    The City of Tulsa ("the City") filed a Motion to Stay or Dismiss Temporary Restraining Order (Dkt. ## 15, 16).  However, the Court had not entered a temporary restraining order at the time of the hearing and the City's counsel agreed the motion was moot.

[2]    The letters mailed to each plaintiff were identical with the exception of the addressee.

In reviewing records and maps of the City of Tulsa, we have determined that the new conditions of OS 21 § 1125 affects your current residence. Please be advised that unless you find alternate housing outside of the Safe Zones created by law you may be subject to felony charges punishable by a fine not to exceed $2,500.00, one year in the county jail or both.

The Tulsa County District Probation and Parole Office is affording you thirty (30) days to find housing before notifying the district attorney's office of violation of the safe zone. However, we cannot guarantee that the local police or sheriff's office will not pursue charges.

Plaintiffs' Ex. 1, Letter from Kathryn L. King dated August 7, 2006. This letter does not mention Okla. Stat. tit. 57, § 590, and at this preliminary stage there is no indication that any plaintiffs would be found in violation of section 590.[3] Plaintiffs conceded at the hearing that they are not requesting a temporary restraining order as to section 590, because plaintiffs are not currently facing a risk of prosecution under that statute.

Section 1125 is facially more restrictive than the residency restriction embodied in section 590. It provides:

A. A zone of safety is hereby created around elementary, junior high, and high schools, licensed child care facilities, playgrounds, and parks. A person is prohibited from being within three hundred (300) feet of any elementary, junior high, or high school, licensed child care facility, playground, or park if the person has been convicted of a crime that requires the person to register pursuant to the Sex Offenders Registration Act or the person has been convicted of an offense in another jurisdiction, which offense if committed or attempted in this state, would have been punishable as one or more of the offenses listed in Section 582 of Title 57 of the Oklahoma Statutes and the victim was a child under the age of thirteen (13) years.

---

[3] The parties stipulated that plaintiffs lived at their current addresses before June 1, 2006. Section 590 provides that a registered sex offender intentionally violates the statute "by intentionally moving into any neighborhood or to any real estate or home within the prohibited distance" from a school, educational institution, playground, park, or licensed child care facility. Under section 590, plaintiffs could maintain ownership of their homes, but could not live within 2000 feet of a school, playground, park, or licensed child care facility.

Okla. Stat. tit. 21, § 1125.  However, Kathryn L. King, the team supervisor for the Tulsa County District Probation and Parole Office ("Probation Office") sex offender unit, testified that she did not believe that section 1125 could be enforced outside of the context of residency without monitoring the movements of a registered sex offender every hour of the day.  The Probation Office lacks the resources to track the movements of sex offenders outside of specified areas, such as the offender's residence or attendance at treatment.  Therefore, the Court will not consider section 1125, for purposes of plaintiffs' motion for temporary restraining order, as anything other than a residency restriction due to the absence of a credible threat of enforcement outside of this context.

The letter stated that any registered sex offender living within a restricted area would have 30 days to find new housing before the Probation Office would refer the matter to the district attorney.  If the offender disagrees with the Probation Office's interpretation of the statute or its determination that the offender resided in a restricted area, there is an administrative process to deal with any complaints.  The offender can file a formal "Request to Staff" within 7 days of receiving the letter, and seek a redetermination of the application of the 300 foot zone of safety to his residence.  If the offender is dissatisfied with Probation Office's decision following the request to staff, the offender can file a grievance with the Oklahoma Department of Corrections ("DOC").[4] None of the plaintiffs exhausted the administrative process cited in the August 7, 2006 letter.  Only two registered sex offenders filed formal complaints regarding the Probation Office's finding that

_____

[4]     The parties did not object to the Court taking judicial notice of the DOC's Inmate/Offender Grievance Report Form.  The Court has downloaded a copy of the grievance form and will consider this part of the administrative process available to plaintiffs to challenge the Probation Office's conclusion that they reside within a zone of safety.

4

they were in violation of section 1125.[5]  However, one of the complaints was not a request for re-measurement, but was simply a request for an extension of time to move to a new address.  One of the plaintiffs informally requested a re-measurement but did not file a written request to staff.

There is no dispute that the district attorney's office has not filed charges against any of the plaintiffs.  King, who drafted the August 7, 2006 letter, sent this letter to 18 sex offenders in Tulsa County notifying them they were in violation of section 1125.[6]  King testified that she has not formally referred any cases to the district attorney's office for consideration and stated that she had not personally followed up on the letters to determine if any registered sex offenders had moved out of a restricted area.  The Tulsa Police Department has adopted an internal policy that it will not make any warrantless arrests under section 1125, and to date no one has been arrested under the statute.  Dkt. # 15, Ex. A, Interoffice Correspondence.  Detective Tim Lawson, a member of the Tulsa Police Department responsible for overseeing the sex offender registration unit, stated that he has not taken any enforcement action under section 1125.  He checks address verifications provided by registered sex offenders and advises them if any address falls within a zone of safety.[7]  He believes that

---

[5]     King testified that, when an offender challenged the Probation Office's application of the 300 foot zone of safety, the Probation Office would send an officer with a GPS unit to plot the location.  The location  was placed on the map provided by the Tulsa Police Department showing restricted areas under section 1125 and the offender was notified of the results.

[6]     Plaintiffs established that there are 474 registered sex offenders in Tulsa County.  This means that slightly under 4 percent of registered sex offenders in Tulsa County have been notified of the need to leave their residences as a result of the amendments to section 1125.

[7]     Lawson informally notifies a registered sex offender if a proposed address would fall within a restricted area, rather than sending a formal rejection of the address verification.  He allows the sex offender to withdraw the address verification and return when he or she has selected a new address.

approximately 20 offenders may be in violation of section 1125, but he has not actually arrested anyone for violating the statute.[8]

Plaintiffs presented the testimony from Mark Randall Lopp,[9] who testified about the increased risk of reoffense and the risk to the community from enforcing the residency restriction. Lopp is a psychotherapist in private practice who treats approximately 150 sex offenders. He opined that offenders with behavioral problems, such as sex offenders, benefit from maintaining a stable home environment. He believes that displacing sex offenders is likely to increase recidivism among sex offenders, which will result in greater harm to the public. On cross examination, he agreed that a person classified as a pedophile would be more likely to reoffend if he of she resided near an area with a high concentration of young children. However, he would only classify 2 to 4 percent of sex offenders as pedophiles.

## II.

Plaintiffs seek a temporary restraining order preventing state and local law enforcement officials from enforcing the residency restriction created by section 1125. In order to obtain a temporary restraining order, plaintiffs bear the burden to prove the following four elements:

> (1) they will suffer irreparable injury unless the motion is granted; (2) the threatened injury to them outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public

---

[8] Mark Pursley, a probation officer in Oklahoma County with responsibility for monitoring sex offenders, testified that he is not authorized to refer charges to the district attorney's office. The Oklahoma County probation office has elected to use its discretionary authority not to enforce section 1125, and municipalities within Oklahoma County have adopted the same policy.

[9] Lopp holds a masters degree in human relations. He is a licensed counselor and a member of the local Sex Offender Management Team Board.

interest; and (4) there is a substantial likelihood that plaintiffs will succeed on the merits.

Kiowa Indian Tribe of Oklahoma v. Hoover, 150 F.3d 1163, 1171 (10th Cir. 1998).  "Because a [temporary restraining order] is an extraordinary remedy, the right to relief must be clear and unequivocal."  Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1066 (10th Cir. 2001) (quoting SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991)); see also Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) ("It frequently is observed that a preliminary injunction is an extraordinary remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion."); West v. Derby Unified School Dist. No. 260, 23 F. Supp. 2d 1220, 1221-22 (D. Kan. 1998) ("A temporary restraining order is an emergency remedy which may only issue in exceptional circumstances and only until the court can hear arguments or evidence on the subject matter of the controversy.").  The Tenth Circuit has adopted the modified likelihood of success requirement, which means that if the movant satisfies the first three requirements for a temporary restraining order, he may "establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation."  Walmer v. United States Dept. of Defense, 52 F.3d 851, 854 (10th Cir. 1995).

## A.  **Irreparable Injury**

Plaintiffs assert that they will suffer an irreparable injury if the Court does not grant a temporary restraining order to enjoin enforcement of section 1125.  They claim they will be forced to move from their homes, or be faced with felony charges if they refuse to do so.  Plaintiffs point out the financial pressures on registered sex offenders, such as fees for polygraph examinations, counseling, and probation fees, which already makes it difficult to maintain ownership of a home.

7

According to plaintiffs, moving would impose a financial hardship that they would be unable to bear. Defendants presented evidence at the hearing showing the statute in not currently being enforced, and there is no basis to conclude that plaintiffs will be charged with a crime for violating section 1125 in the immediate future. Defendants also argue that economic loss does not meet the irreparable injury requirement for a temporary restraining order.

Plaintiffs must be able to prove that there is a threat of irreparable harm that is "certain, great, actual 'and not theoretical.'" Heideman v. South Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003). A showing of irreparable harm is the "single most important prerequisite for the issuance of a preliminary injunction [and] the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Dominion Video Satellite, Inc. v. Echostar Satellite Corp., 356 F.3d 1256, 1261 (10th Cir. 2004) (quoting Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)). An injunction will be appropriate only if plaintiffs' injury can not be adequately compensated through monetary damages. Tri-State Generation & Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 874 F.2d 1346, 1354 (10th Cir. 1989). The moving party must show that the alleged injury is "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Schrier v. University of Colorado, 427 F.3d 1253, 1266 (10th Cir. 2005) (quoting Heideman, 348 F.3d at 1189).

Based on the evidence presented at the hearing, the Court finds there is no threat of irreparable harm to plaintiffs if defendants are not enjoined from enforcing section 1125. Based on the testimony of plaintiffs' witnesses, there is not a substantial likelihood that plaintiffs will be charged with a violation of the residency restriction. King testified that no charges have actually

been forwarded to the district attorney's office and the Probation Office will not initiate criminal charges on its own.  The Tulsa Police Department has adopted a policy that no warrantless arrests will be made under section 590 or section 1125.[10]  Both the probation office and local municipalities within Oklahoma County have decided not to enforce the residency restriction for the present time. Since no potential charges for any of the plaintiffs have actually been referred to the district attorney and the Tulsa Police Department will not arrest anyone for living within a zone of safety, there is not an imminent risk of irreparable harm to plaintiffs.  Plaintiffs may fear that they will eventually be prosecuted under the statute, but that is insufficient to justify granting a temporary restraining order. In cases where the risk of harm is speculative, plaintiffs must at least show there is a "significant risk of irreparable harm."  Greater Yellowstone Coalition v. Flowers, 321 F.3d 1250, 1259 (10th Cir. 2003).  Plaintiffs have not carried their burden and cannot establish that they will suffer irreparable harm if a temporary restraining order is denied.

### B.  Injury to Plaintiffs Outweighs Harm to Defendants

Plaintiffs argue that defendants will face no risk of injury if they are enjoined from enforcing the statute, but that plaintiffs will lose their homes, jobs, and families because of the statutory restrictions.  The Court has already rejected this argument, because the evidence produced at the hearing shows little risk that plaintiffs will be charged with a crime or forced to move from their homes.  Plaintiffs presented testimony from a psychotherapist, Lopp, who stated that 85 percent of sex offenders do not commit crimes against strangers.  Of the remaining 15 percent, only 2 to 4 percent are pedophiles who face an increased risk to reoffend if they are allowed to reside within

---

[10]     Officers have been ordered to conduct investigations of alleged violations of the zones of safety, but "[o]fficers are specifically directed not to make a warrantless (probable cause) arrest for violations of the "zones of safety."  Dkt. # 15, Ex. A, Interoffice Correspondence.

300 feet of a school, park, playground, or child care facility.  Based on Lopp's testimony, plaintiffs argue that defendants have a relatively weak interest in enforcing the zone of safety against plaintiffs.  Defendants argued that the state has a legitimate interest in protecting children from 15 percent of sex offenders who are likely to reoffend if placed near children.  The injury to plaintiff is only speculative at this point, but defendants argue there would be a significant risk of harm to children if defendants were denied the ability to enforce the residency restriction.  Plaintiffs argue that there is little risk of harm to defendants if the Court enjoins defendants from enforcing section 1125, because plaintiffs will be likely to prove the statute is unconstitutional.

This element requires the Court to balance the hardships to the parties that would result from issuing the proposed injunction.  Kos Pharmaceuticals, Inc. v. Andrx Corp., 369 F.3d 700, 727-28 (3d Cir. 2004).  The Tenth Circuit has held that the government is not harmed when it is enjoined from enforcing an unconstitutional statute.  American Civil Liberties Union v. Johnson, 194 F.3d 1149,1163 (10th Cir. 1999); see also Giovani Carandola, Ltd. v. Bason, 147 F. Supp. 2d 383, 395 (M.D.N.C. 2001) ("While the State holds a legitimate interest in establishing a uniform system of control and administration over the sale of alcohol, that system is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional); American Civil Liberties Union v. Johnson, 4 F. Supp. 2d 1029, 1034 (D.N.M. 1998) ("the threatened injury to Plaintiffs' constitutionally protected speech outweighs whatever damage the preliminary injunction may cause Defendants' inability to enforce what appears to be an unconstitutional statute").

As discussed below, the Court does not find that plaintiffs have a significant likelihood of success on the merits.  At this preliminary stage, the Court does not find there is a significant chance

that plaintiffs will prevail on their constitutional claims and, if the statute is enforced, there is little risk defendants will be applying an unconstitutional statute. After balancing the potential hardships to plaintiffs and defendants, the Court finds that the injury to defendants from issuing a temporary restraining order outweighs any harm to plaintiffs from denying their request for a temporary restraining order. Defendants have a significant interest in protecting children from exposure to registered sex offenders, even if only 15 percent of registered sex offenders are likely to reoffend. Defendants' interest is strengthened by the narrow reading of the statute adopted by the law enforcement community, as section 1125 has been interpreted to apply to a registered sex offender who <u>lives</u> within 300 feet of a school <u>and</u> whose victim was under 13 years of age. Plaintiffs have not demonstrated an immediate risk of enforcement of section 1125, so there is no need for the Court to speculate on the type of harm that might befall plaintiffs if the statute is enforced. The Court finds that plaintiffs have not carried their burden to prove that the injury to plaintiffs outweighs the harm to defendants.

### C. <u>Injunction Would Not Be Adverse to the Public Interest</u>

Plaintiffs primary argument as to this factor is that the public interest will not be harmed if defendants are prohibited from enforcing an unconstitutional statute. Plaintiffs adduced evidence detailing the treatment programs and monitoring systems that are in place without the residency restrictions, attempting to show that there is little chance of harm to the public if defendants are enjoined from enforcing the statute. Defendants argue that the courts have recognized that sex offenders pose a special risk to the general public, and the public has a legitimate interest in seeing residency restrictions applied. <u>See</u> <u>McKune v. Lile</u>, 536 U.S. 24, 32 (2003) ("Sex offenders are a serious threat in this Nation"); <u>Cutshall v. Sundquist</u>, 193 F.3d 466, 482-83 (6th Cir. 1999) ("Given

11

the indications that sex offenders pose a particular threat of reoffending, we cannot say that the Act

is irrational.")

Courts have found that the public has a legitimate interest in protecting children from sex

offenders, and that it would be adverse to the public interest to prevent the state from enforcing

restrictions that keep sex offenders a safe distance from areas populated by children.  One court has

stated that:

> the public interest weighs heavily against granting temporary injunctive relief.  The
> public has a substantial and compelling interest in protecting children from sex
> offenders.  Although the Court recognizes that the public also has an interest in
> seeing that unconstitutional laws are not enforced, as explained above, § 2950.031
> likely is not unconstitutional.  During the hearing, Plaintiffs questioned whether the
> public interest would be served by having the streets flooded with homeless sex
> offenders.  Plaintiffs also posit that § 2950.031 may result in more stress-related
> recidivism and that the public would be better served by not putting sex offenders
> into stressful situations about their residences.  Whether these will be the end results
> of the enactment of § 2950.031 is purely speculative.  Nevertheless, Plaintiffs'
> arguments in this regard represent policy considerations which are best-addressed to
> the legislature and which the legislature is best-equipped to resolve.  It is sufficient
> for the Court for present purposes that the public has a compelling interest in
> protecting children from sex offenders and that § 2950.031 furthers that goal by
> prohibiting sex offenders from establishing permanent residences in areas where
> children are sure to be concentrated.

Doe v. Petro, 2005 WL 1038846, *4 (S.D. Ohio 2005); see also Doe v. Kelley, 961 F. Supp. 1105,

1112 (W.D. Mich. 1997) ("issuance of an injunction that would frustrate legislative will, expressed

in legislation that enjoys a presumption of constitutionality, can hardly be deemed to advance the

public interest.  On the contrary, it is undisputed that implementation of notification provisions will

enable members of the public to take legitimate and effective actions to protect themselves and

prevent future crime.").  Petro clearly explains the public interest in allowing law enforcement

officials to have the power to enforce residency restrictions.

Although the public has an interest in seeing that unconstitutional laws are not enforced, the statute in this case appears to be constitutional.  See Utah Licensed Beverage Ass'n, 256 F.3d at 1076 ("Because we have held that Utah's challenged statutes also unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest."); Nova Health Systems v. Edmondson, 373 F. Supp. 2d 1234 (N.D. Okla. 2005) (plaintiff must make a prima facie showing of unconstitutionality before an injunction can be issued to protect public interest in enjoining allegedly unconstitutional statute).  In any event, the public has a significant interest in protecting children from being in close proximity of registered sex offenders, even if only 15 percent of such offenders pose a high risk of reoffending.  Balancing the hardships, plaintiffs have not shown that there is a significant risk of to them if an injunction is not issued. However, the public derives a significant benefit from knowing the laws can be enforced to protect children from sex offenders.  The Court finds that the public would be adversely affected by an injunction preventing defendants from enforcing the statute.

### D.  Substantial Likelihood of Success on the Merits

Plaintiffs have filed six claims for relief, and claim that they have a substantial likelihood on the merits of each claim.  Plaintiffs claim that: (1) section 1125 violates plaintiffs' rights to procedural due process; (2) plaintiffs have a fundamental right to reside with their family under the substantive due process clause; (3) section 1125 is void for vagueness; (4) the statute violates plaintiffs' right to equal protection of the law; (5) the statute constitutes a retroactive punishment in violation of the Ex Post Facto Clause; and (6) defendants should be equitably estopped from enforcing the statute.  Defendants respond that plaintiffs do not have a substantial likelihood on succeeding on any of these claims.

1.  *Procedural Due Process*

Plaintiffs claim that their right to procedural due process has been violated by the statutes because: (1) plaintiffs are not provided a pre-enforcement hearing for an individualized determination of their danger to the community; and (2) the statutes do not provide adequate notice where sex offenders may or may not reside.  Plaintiffs' basis for claiming a right to procedural due process is that they have a property interest in their homes, and that defendants could potentially require plaintiffs to vacate their homes under section 1125.[11]  Defendants respond that the Supreme Court has addressed plaintiffs' procedural due process arguments regarding pre-enforcement hearings and rejected this argument.

Plaintiffs focus heavily on the inadequacy of the procedures for enforcement of the statutes, but ignore the two basic prerequisites before the Court can even reach that issue.  First, plaintiffs must show that they suffered a deprivation and that the governmental action was intentional.  Daniels v. Williams, 474 U.S. 327, 331 (1986).  Plaintiffs have not been deprived of a property interest in their homes, because the statute has not actually been enforced, nor is there an immediate threat of enforcement.  In addition, section 1125 does not require a sex offender to sell his or her property, because its sole concern is the person's physical presence in a forbidden space.  The statute does not impose a forfeiture requirement, and it is not clear that governmental enforcement of the

---

[11]     Plaintiffs also argue that they have a liberty interest in maintaining their chosen profession, and that the zones of safety prevent plaintiffs from performing necessary parts of their employment.  For purposes of the temporary restraining order, the only issue before the Court is the residency restriction created by section 1125, because the statute is not being enforced as a movement restriction.

statute would interfere with a property interest of any plaintiff.[12]  Therefore, plaintiffs can not demonstrate that they have actually been deprived a property interest.

Second, plaintiffs must demonstrate that they have a life, liberty or property interest. Plaintiffs have cited no precedent showing that they have a property interest in residing in their homes.  For plaintiffs to have a property interest, they must have a "legitimate claim of entitlement" to the property.  Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972); Curtis Ambulance of Florida, Inc. v. Board of County Commissioners, 811 F.2d 1371, 1375 (10th Cir. 1987).  If plaintiffs are not actually required to sell their homes or give up any interest in property within a restricted area, plaintiffs might have a substantive due process claim, but not a procedural due process claim.  Plaintiffs argue that the statutes impose a financial burden by requiring plaintiffs to maintain a separate residence for the family, but this kind of unintentional burden is not properly addressed by a procedural due process claim.

Even if the Court were to assume plaintiffs have a property interest and have been intentionally deprived of that property, plaintiffs are not likely to succeed on a procedural due process claim.  Under Mathews v. Eldridge, 424 U.S. 319 (1976), the Court must consider three elements to determine what kind of procedures are constitutionally required:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

---

[12]    There may also be a standing issue related to this claim, because defendants have taken no action to enforce the statute.  Until plaintiffs are in fear of a legitimate threat of enforcement, they may continue to reside in their homes and no property interest will be implicated. However, that issue is not before the Court.

Id. at 335.  The Eighth Circuit has held that once the legislature has classified sex offenders as potentially dangerous, there is no need for the state to provide additional procedures to make an individualized determination for exemptions from residency restrictions on sex offenders.  Doe v. Miller, 405 F.3d 700, 709 (8th Cir. 2005).  The Iowa statute in Miller applied to all registered sex offenders and did not take into account individual factors related to the person's risk of recidivism.  Therefore, the Eighth Circuit found that there was no need to establish a procedure to determine the level of danger posed by each registered sex offender, because it was not relevant to the application of the statute.  Id.

The Supreme Court has ruled on a similar issue in Connecticut Department of Public Safety v. Doe, 538 U.S. 1 (2003), where it held that sex offenders had no right to challenge their placement on a sex offender registry under the Due Process Clause.  In that case, sex offenders argued that they did not have an opportunity to contest whether they were likely to be "currently dangerous" before being placed on the registry, and that they were entitled to pre-registration hearing.  Id. at 4.  The Supreme Court found that placement on the registry was based on the offender's prior conviction only, not the possibility of recidivism.  Id.  In previous cases finding a liberty interest to prove or disprove facts related to one's reputation, the challenged facts were relevant to the governmental inquiry.  Id. at 7.  Even if a sex offender could show that he poses no danger to society, Connecticut could still list him on the registry without a hearing to determine his potential danger.  The right at issue was not a procedural due process right, but a substantive due process right.

The constitutionality of Oklahoma's sex offender registry is not before this Court, but the analysis of the residency restriction is similar.  The only fact necessary for the residency restriction to apply is the offender's prior conviction of a sex offense.  Therefore, there is no need for a pre-

enforcement hearing to determine the offender's risk level. Although not required by statute, the DOC has adopted an administrative procedure to allow any person affected by the statute to challenge the determination that his residence falls within a zone of safety. This adequately protects plaintiffs' interest in ensuring that the statute is accurately applied and that they will not be forced to move if they are not in violation of the statute.[13] The Court does not find that plaintiffs have a substantial likelihood of succeeding on their claim for procedural due process.

2. *Substantive Due Process*

Plaintiffs argue that section 1125 is broader than necessary to protect the state's interest in protecting children from exposure to harm from sex offenders and they seek strict scrutiny review of their substantive due process claim. They claim they have a fundamental right to live with family members, to choose where they want to live, and a fundamental right to engage in intrastate travel. Other courts have considered state statutes creating residency restrictions for registered sex offenders, and no court has applied strict scrutiny review to sex offenders' challenges to residency restrictions. Defendants deny that section 1125 infringes a fundamental right of plaintiffs under the Due Process Clause and cite Miller as dispositive of plaintiffs' claim.

The Supreme Court has recognized a fundamental right to reside with a family unit of a person's choice without direct state interference. Lyng v. Castillo, 477 U.S. 635 (1986); Moore v. City of East Cleveland, 431 U.S. 494 (1977). However, this intrusion must be intentional and the governmental action must directly interfere with a person's family relationships. Weems v. Little Rock Police Dept., 453 F.3d 1010, 1015 (8th Cir. 2006) ("Because the residency restriction does not

---

[13]     Plaintiffs have not taken advantage of the administrative process, with the exception of one plaintiff who made an informal request to reconsider the Probation Office's determination that he was in violation of the statute.

infringe upon a fundamental right, 'we consider only whether the statute rationally advances some legitimate government purpose.'"); Miller, 405 F.3d at 711 ("the Does' characterization of a fundamental right to 'personal choice regarding the family' is so general that it would trigger strict scrutiny of innumerable laws and ordinances that influence 'personal choices' made by families on a daily basis").  A geographical restriction limiting where a sex offender may live does not dictate with whom a sex offender may live, only that the person may not live within a certain number of feet from a school, park, or playground.  Illinois v. Leroy, 828 N.E.2d 769, 777 (Ill. Ct. App. 2005); see also Doe v. Baker, 2006 WL 905368, *7 (N.D. Ga. 2006) ("Like the Iowa law [in Miller], the Georgia Residence Act, on its face, has no effect on the family since sex offenders are permitted to live with whomever they choose.").  The fundamental right for the protection of the family unit is not so broad as to prevent the state from enacting regulations that indirectly interfere with this right, and this does not entitle plaintiffs to strict scrutiny review in this case.  The residency restriction imposed by section 1125 does not limit who sex offenders may live with, only where they may live. This indirectly limits plaintiffs' right to reside with their family, but they could always move their family to a location where plaintiffs could live without violating the statute.  The statute may make it more difficult for sex offenders to live with their families in some circumstances, but at most, this is an indirect and unintentional effect of the statute.  Plaintiffs are not entitled to strict scrutiny review based on the fundamental right to be free from direct state interference with the family unit.

Plaintiffs cite Korematsu v. United States, 323 U.S. 214 (1944), for the proposition that a person has a right to live where he chooses, but Korematsu does not support this argument.  In a general sense, other courts have cited Korematsu for the idea that there is fundamental right to live where a person chooses.  Hanson v. Unified School Dist. No. 500, Wyandotte, 364 F. Supp. 330,

18

332 (D. Kan. 1973) ("The right to live where one chooses has long been recognized as one of the liberties protected from arbitrary governmental action by the Fourteenth Amendment."); Miller v. Laird,349 F. Supp. 1034, 1039 n.30 (D.D.C. 1972) (citing Korematsu as basis for a fundamental right to "live where one chooses").   However, Korematsu was more concerned with the government's power to classify its citizens based on race during a time of war.  The Supreme Court has not relied on Korematsu to create a fundamental right for a person to live anywhere without state interference.  In Hanson, a case relied upon by plaintiffs, the court stated only that a person should be free from arbitrary governmental action.  364 F. Supp. at 332.  A classification based on a person's status as a registered sex offender is not arbitrary, because it is clearly within the state's power to act to protect children from harm.  Assuming such a fundamental right existed, it would not be implicated in this case and would not entitle plaintiffs to strict scrutiny review.

The Supreme Court has never clarified whether intrastate travel is a fundamental right.[14] Memorial Hospital v. Maricopa County, 415 U.S. 250, 256 (1974); Willis v. Town of Marshall, North Carolina, 426 F.3d 251, 265 (4th Cir. 2005); Miller, 405 F.3d at 712.  Plaintiffs cite one case from the Sixth Circuit which held that the "right to travel locally through public spaces and roadways" is a fundamental liberty interest.  Johnson v. City of Cincinnati, 310 F.3d 484 (6th Cir. 2002).  The Seventh and Eighth Circuits have rejected Johnson specifically in the context of residency restrictions on sex offenders, and found that sex offenders do not have a fundamental right to unrestricted freedom of movement.  Miller, 405 F. at 713; Doe v. City of Lafayette, Indiana, 377 F.3d 757, 769-70 (7th Cir. 2004).  Even if such a right were recognized, it is not clear that a

---

[14]     This issue more closely relates to plaintiffs' facial attack on section 1125's movement restriction.  To a more limited extent, the right to travel is implicated by a residency restriction and the Court will consider it on that basis only.

residency restriction would implicate such a right.  Miller, 405 F.3d at 713; Weems, 453 F.3d at 1016 (holding that a residency restriction does not inhibit a registered sex offender from entering or leaving any particular area, nor does it "erect any actual barrier to intrastate movement").  Given the lack of uncertainty on this issue and the Supreme Court's reluctance to recognize a right to intrastate travel, this Court finds strict scrutiny review of plaintiffs substantive due process claim inappropriate.

Under rational basis review, the residency restriction imposed by section 1125 is not unconstitutional.  "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).  The Court must presume the statute is constitutional and the burden is on plaintiffs to prove that the statute is not rationally related to a legitimate state interest.  Nat'l R.R Passenger Corp v. Atchison, Topeka & Santa Fe Ry. Co, 470 U.S. 451, 476-77 (1985).   The state clearly has a legitimate interest in preventing sex offenders from living near areas where children are most likely to be found.  Even if the state has selected a method that may provide more protection than is absolutely necessary for Oklahoma's children, that is a decision best left to the state legislature.  Dandridge v. Williams, 397 U.S. 471, 484 (1970) ("If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some equality.'").  The statute arguably achieves the state's interest in protecting children, and as long as the legislature's method is rationally related to accomplishing this purpose, plaintiffs will not succeed on a claim for substantive due process.  The residency restriction

will most likely survive rational basis review and plaintiffs are not substantially likely to succeed on the merits.

     3. *Vagueness*

     Plaintiffs claim that the statutes are impermissibly vague because a reasonable person would not understand what conduct the legislature intended to prohibit.  Plaintiffs allege that the terms "park" and "playground" do not clearly define what areas of the city sex offenders must avoid and are consequently unconstitutionally vague under the Due Process Clause.  Plaintiffs also argue that section 1125 does not provide sex offenders adequate notice of its outer limits because the state may add new zones of safety without notice to offenders, requiring them to move after they have found a suitable residence.

     A statute is void for vagueness if it does not "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  United States v. Michel, 446 F.3d 1122, 1135 (10th Cir. 2006) (quoting Kolender v. Lawson, 461 U.S. 352, 357 (1983)).  Under the Due Process Clause, the court must determine if the statute provides fair warning of the conduct the legislature intends to prohibit.  Rogers v. Tennessee, 532 U.S. 451 (2001).  The key requirement for the court to consider is whether the "legislature [has] establish[ed] minimal guidelines to govern law enforcement."  Kolender, 461 U.S. at 358 (quoting Smith v. Goguen, 415 U.S. 566, 574-75 (1974)).  In criminal cases, if there is a "grievous ambiguity or uncertainty in the language or structure" of the statute, it should be interpreted in favor of the criminal defendant.  United States v. Onheiber, 173 F.3d 1254, 1256 (10th Cir. 1999); United States v. Blake, 59 F.3d 138, 140 (10th Cir. 1995).

This is not a criminal case, and plaintiffs have cited no basis for the Court to construe section 1125 with any additional deference in their favor.

Plaintiffs have not presented any evidence that suggests a reasonable person would not be able to identify a park or a playground as intended by the statute, and the legislature's use of such language adequately notifies plaintiffs what areas of the city to avoid.  Although plaintiffs theoretically could be forced to move after finding a residence, that issue is not before the Court.  At the hearing, plaintiffs admitted that no enforcement action has been taken against them, even though their current addresses violate section 1125.  Thus, the vagueness argument is not relevant to plaintiffs' motion for a temporary restraining order.

4.  *Equal Protection*

Plaintiffs claim that section 1125 violates the Equal Protection Clause of the Fourteenth Amendment because the statute does not require a determination of the offender's level of dangerousness if the crime was committed in Oklahoma, but out-of-state sex offenders are classified based on the age of their victim.  According to plaintiffs, the law provides no rational basis for distinguishing between in-state and out-of-state sex offenders.  Plaintiffs ask the Court to review their equal protection claim under strict scrutiny.  Defendants do not address this classification, but argue that plaintiffs are not entitled to strict scrutiny review.  Under rational basis review, defendants claim that section 1125 should be upheld as a constitutional use of the legislature's authority.

Plaintiffs do not claim that they belong to a suspect class, but seek strict scrutiny review on the basis that the statute interferes with a fundamental right under the Equal Protection Clause.  Plaintiffs confuse fundamental rights under the Due Process Clause with the limited fundamental rights triggering strict scrutiny under the Equal Protection Clause.  The Supreme Court has classified

only the following rights as fundamental for purposes of an equal protection claim: (1) the right to procreate, Skinner v. Oklahoma, 316 U.S. 535 (1942); (2) the right to vote, Harper v. Virginia Board of Elections, 383 U.S. 663 (1966); (3) access to the judicial process, Douglas v. California, 372 U.S. 353 (1963); and (4) the right to interstate travel, Shapiro v. Thompson, 394 U.S. 618 (1969). Plaintiffs do not specify which fundamental right the statute allegedly violates, and plaintiffs do not clearly invoke one of the four rights listed above. Therefore, the standard of review for plaintiffs' equal protection claim is rational basis. Grace United Methodist Church v. City of Cheyenne, 427 F.3d 775, 792 (10th Cir. 2005); Powers v. Harris, 379 F.3d 1208, 1215 (10th Cir. 2004).

Plaintiffs' argument under the Equal Protection Clause is moot for purposes of the temporary restraining order, because law enforcement officials have applied the same restriction for in-state and out-of-state sex offenders. King testified that the letter she drafted and mailed to sex offenders under her supervision, which was approved by legal counsel for DOC, was sent to offenders who lived within 300 feet of a restricted area and whose victims were under 13 years of age. Therefore, plaintiffs equal protection claim is moot based on the facts presented at the hearing.

5. *Ex Post Facto Clause*

Plaintiffs argue that section 1125 retroactively imposes an additional punishment after a sex offender has already been convicted of a crime. They interpret the residency restrictions as a form of banishment from the community, which has been recognized as one the most serious forms of criminal punishment. See Smith v. Doe, 538 U.S. 84, 98 (2003) (analogizing to shaming punishments used in colonial America, which included banishment as the most severe form of public humiliation). Defendants respond that the statute is clearly civil, instead of punitive, in nature and

section 1125 does not impose a punishment as the term is used in Ex Post Facto Clause jurisprudence.

The Ex Post Facto Clause, Art. I, § 10 provides that "No State shall . .  pass any . . . ex post facto Law."  A state may not adopt a criminal law that retroactively punishes a person for conduct that was lawful when it occurred, nor may a state retroactively increase the punishment for a criminal violation.  Rogers, 532 U.S. at 456; Lynce v. Mathis, 519 U.S. 433, 439 n.12 (1997); Calder v. Bull, 3 Dall. 386 (1798).  The Supreme Court has clarified that the Ex Post Facto Clause applies only to criminal legislation.  Kansas v. Hendricks, 521 U.S. 346, 361 (1997).  If the legislature's intent was punitive, this ends the inquiry and the law will be found to violate the Ex Post Facto Clause.  Smith, 538 U.S. at 92.  If the statute is not clearly punitive, the Court must determine whether the legislature intended to adopt a civil or criminal statute, and even if the legislature indicates it intended to pass a civil law, whether the effect of the law is "so punitive either in purpose or effect as to negate that intention."  United States v. Ward, 448 U.S. 242, 248-49 (1980).  The Supreme Court has stated that "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."  Hudson v. United States, 522 U.S. 93 (1997).

The Supreme Court has identified seven factors to guide courts when determining if a law is criminal or civil in nature: (1) "[w]hether the sanction involves an affirmative disability or restraint;" (2) "whether it has historically been regarded as a punishment;" (3) "whether it comes into play only on a finding of scienter;" (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence;" (5) "whether the behavior to which it applies is already a crime;" (6) "whether an alternative purpose to which it may rationally be connected is assignable

for it;" and (7) "whether it appears excessive in relation to the alternative purpose assigned." Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963).  Several courts have been faced with ex post facto challenges to sex offender residency restrictions and every court has found the restrictions to be civil in nature.  See Weems, 453 F.3d at 1017; Miller, 405 F.3d at 718-23; Baker, 2006 WL 905368 at *4-6; Petro, 2005 WL 1038846 at *2; Lee v. Alabama, 895 So.2d 1038 (Ala. Crim. App. 2004); Doe v. Phillips, 194 S.W.3d 833, 841-42 (Mo. 2006) (interpreting Missouri Constitution's ex post facto clause co-extensively with federal constitutional provision); American Civil Liberties Union of New Mexico, 137 P.3d at 1231-32; Ohio v. Cupp, 2006 WL 925174 (Ohio Ct. App. 2006).

The zone of safety facially has a problem under the Ex Post Facto Clause, because it is codified in Oklahoma's criminal code and creates a felony for violating the 300 feet zones of safety around schools, parks, child care facilities, and playgrounds.  However, "[t]he location and labels of a statutory provision do not by themselves transform a civil remedy into a criminal one."  Smith, 538 U.S. at 94 (finding that codification of the sex offender registration provisions did not convert a civil regulatory law into a punitive statute); United States v. One Assortment of 89 Firearms, 465 U.S. 354, 364-65 (1984) (forfeiture penalties included in criminal code could be civil and criminal in nature).  The placement of the statute in Oklahoma's criminal code, although a factor in the Court's analysis, is not dispositive.

Applying the factors from Kennedy, the Court finds that the residency restrictions are not intended as a criminal punishment.  Although plaintiffs characterize a residency restriction as a form of banishment, this argument overstates the effect of the statute.  Plaintiffs are not expelled from the community; they are merely prohibited from living within 300 feet of a school, playground, park, or child care facility.  See Miller, 405 F.3d at 719; Leroy, 828 N.E.2d at 540-41.  Miller

distinguished residency restrictions from criminal punishments because residency restrictions do not "'expel' the offenders from their communities or prohibit them from accessing areas near schools or child care facilities for employment, to conduct commercial transactions, or for any purpose other than establishing a residence." 405 F.3d at 719. Although some the statute imposes some restraint on registered sex offenders, residency restrictions are clearly distinguishable from the historic punishment of banishment.

Residency restrictions do not promote traditional goals of punishment, because the goal of the statutory scheme is regulatory. The statute defines a protected area as a "zone of safety," and the clear intention is to prevent children from coming into contact with registered sex offenders. The law may impose adverse consequences on sex offenders, but that does not mean the purpose of the statute is to punish registered sex offenders. American Civil Liberties Union, 137 P.3d at 1231. Plaintiffs would like to assign a criminal purpose to the residency restrictions, but have presented no legal basis for the Court to do so. Based on existing judicial precedent and the evidence presented by plaintiffs, the Court does not find that the Oklahoma legislature clearly intended to enact a criminal statute. At this preliminary stage, the Court does not find that there is a substantial likelihood that plaintiffs will succeed on the merits of this claim.

6. *Equitable Estoppel*

Plaintiffs suggest that defendants should be equitably estopped from enforcing the statute, because plaintiffs addresses were approved before June 1, 2006. Plaintiffs are treating the Tulsa Police Department's acceptance of the address as a binding contract, which defendants should be bound to follow regardless of subsequent changes in the law. To succeed on their claim for estoppel, plaintiffs must prove that:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

Lurch v. United States, 719 F.2d 333, 341 (10th Cir. 1983).  In cases where the moving party seeks to estop the government from acting, the court must consider the interest of the public in having its laws enforced and the risk of undermining the rule of law by preventing the government from enforcing its laws.  Che-Li Shen v. INS, 749 F.2d 1469, 1473 (10th Cir. 1984).

In this case, there is not a substantial likelihood that plaintiff will succeed on this claim, especially when the public interest is considered.  Plaintiffs were never ignorant of the fact that the residency restrictions could be changed by the legislature.  There is also no evidence that plaintiffs detrimentally relied on assertions by law enforcement officials to purchase a home.   This means there is no chance plaintiffs relied on approval of their address to move to a residence which was later determined to be in violation of section 1125.  Plaintiffs are not likely to succeed on this claim and are not entitled to a temporary restraining order based on their claim for equitable estoppel.

### III.

In summary, the Court does not find that plaintiffs have carried their burden as to any of the four elements necessary for the issuance of a temporary restraining order.  Given the lack of enforcement of section 1125, there is no risk of irreparable harm to plaintiffs at this stage of the proceedings.  The evidence also shows that defendants are interpreting the statute more narrowly than it is written.  The Court does not find that this case presents the "immediate and irreparable injury" that would justify the extraordinary measure of granting a temporary restraining order. Fed. R. Civ. P. 65(b). The Court's finding that plaintiffs do not have a substantial likelihood of success on the merits reduces any concerns that plaintiffs will unjustly be prosecuted under an

unconstitutional statute.   Therefore, plaintiffs are not entitled to a temporary restraining order enjoining defendants from enforcing section 1125.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Brief in Support (Dkt. # 6) is **denied**.

**DATED** this 14th day of September, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT